UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PEARL L. JOHNSON                                        PLAINTIFF

VS.                              CIVIL ACTION NO. 3:10CV73TSL-FKB

DR. LONNIE EDWARDS, IN HIS CAPACITY              DEFENDANTS
AS SUPERINTENDENT OF JACKSON PUBLIC
SCHOOLS DISTRICT AND JASON SARGENT
IN HIS OFFICIAL AND INDIVIDUAL CAPACITY

                    MEMORANDUM OPINION AND ORDER

     This cause is before the court on the motion of defendants

Dr. Lonnie Edwards, in his official capacity as Superintendent of

the Jackson Public School District (JPS), and Jason Sargent, in

his individual and official capacities, for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff Pearl L. Johnson has responded in opposition to the

motion and the court, having considered the memoranda of

authorities, together with attachments, submitted by the parties,

concludes the motion is well taken and should be granted.[1]

_____

     [1]  Following two lengthy extensions of time for filing her
response to defendants' summary judgment motion, briefing on the
motion was completed on September 6, 2011.  Thereafter, in
September 2011, plaintiff hand-delivered to the undersigned's
chambers her own motion for summary judgment, as well as a motion
to amend her earlier response to defendants' summary judgment
motion to offer additional proof.  Upon discovering that plaintiff
had failed to file these documents in the court record, on October
26, the motions were forwarded to the clerk's office for filing
and made part of the record.
     Defendants have moved to strike plaintiff's motion for
summary judgment because it is untimely, having been filed without
leave of court long past the court's June 16, 2011 deadline for
dispositive motions, and because it is without merit.  Defendants
also oppose plaintiff's request to amend her response to their

This lawsuit is the second employment discrimination action plaintiff has brought in this court against her former employer, JPS, and has its genesis in her first lawsuit.  In the previous suit, Civil Action No. 3:07CV621DPJ-FKB, filed October 19, 2007, plaintiff, proceeding pro se, complained that while employed as a literacy coach at Rowan Middle School, she was sexually harassed

---

summary judgment motion, arguing there is no valid reason why the documents plaintiff offers could not have been earlier presented. In response, plaintiff cites a relapse in her medical condition, the loss of her mother and the burglary of her home as the causes for her delay in moving for summary judgment, and as the basis for her request to amend her response to defendants' motion.

Plaintiff's summary judgment motion will be stricken as untimely (and also because it is not supported by the required memorandum).  Alternatively, the motion is denied on the merits, as it is unsupported by any competent summary judgment evidence.

Furthermore, while the court is sympathetic to the loss of plaintiff's mother and her other personal difficulties, the motion to amend her response to defendants' motion will be denied.  She proposes by this amendment to elaborate upon existing allegations as well as introduce new factual allegations, including, for example, allegations that defense counsel harassed her during her deposition in her earlier lawsuit against defendants; and that she had to resign in 2010, after a May 2010 class observation visit by George Elementary School Principal MaryAnn Bailey.  However, she has utterly failed to explain how her recent difficulties contributed to her failure to divulge the new factual allegations during the discovery process or in her original response to the motion for summary judgment.  Likewise, the numerous additional exhibits which plaintiff seeks to offer appear to have been available to her when she filed her response.  Plaintiff's pro se status does not entitle her to a make a moving target of her claims in this case.  See United States v. Jenkins, 780 F.2d 518, 520 (5th Cir. 1986) (although pro se parties receive some lenience with respect to their pleadings, "pro se status does not give [a party] a privilege to ignore reasonable court rules and procedures."); see also United States v. Fields, 483 F.3d 313, 359 (5th Cir. 007) ("A defendant proceeding pro se is expected to follow ordinary procedural rules.") (citation omitted).

2

by the school's principal, and was subjected to a hostile work environment and to retaliation.

In August 2007, just prior to filing her prior lawsuit, plaintiff was transferred from Rowan Elementary to Brown Elementary School.  On January 26, 2009, in the midst of litigating the prior action, plaintiff filed a second charge of discrimination with the EEOC, complaining that she had been retaliated against for filing the earlier charge of discrimination relating to discrimination while at Rowan Elementary.  In this charge, plaintiff alleged she suffered such discrimination from August 1, 2007 through August 13, 2008, and she related the particulars of alleged discrimination as follows:

> On July 17, 2007 I filed an EEOC charge of discrimination (423-2007-01059) against the Principal at Rowan Middle School. In August 2007 I was transferred to Brown Elementary where I was constantly discriminated against and harassed by the Principal.  I was refused supplies, not allowed to adjust the climate controls in the classroom, not allowed to implement lesson plans, given a poor and unfair evaluation, given bogus write ups, campaigned against to make it appear that my work was ineffective, and my position was changed three times within a 13-day period.  I complained to management to no avail.
>
> No reasons were given for the harassment and unfair treatment.  Higher management gave excuses for the Principal.
>
> I believe I [was] discriminated against and subjected to a hostile work environment in retaliation for opposing discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

JPS moved for and in May 2009 was granted summary judgment in the earlier action on plaintiff's claims for sexual harassment and hostile work environment, but its motion was denied as to her claim for retaliation, since in the court's opinion, JPS's memorandum in support of its motion did not adequately address the retaliation claim alleged in the complaint. And on February 2, 2010, while that action was pending for trial, plaintiff, pro se, filed her complaint in this action, followed by an amended complaint filed June 10, 2010, in which she purports to set forth claims against the District and Sargent for various violations of Title VII, including age and gender discrimination, hostile work environment and retaliation, and additionally asserts a putative claim for violation of the Rehabilitation Act of 1973.

In July 2010, plaintiff's first lawsuit proceeded to trial in which she presented evidence of alleged incidents of retaliation during her employment at Brown Middle School. The trial resulted in a $50,000 jury verdict for plaintiff for her alleged emotional distress. Post-trial, JPS renewed its motion for judgment as a matter of law; and while Judge Daniel P. Jordan left undisturbed the jury's finding that plaintiff had been transferred to Brown Elementary School in retaliation for informal complaints regarding what she perceived to be discriminatory treatment, he concluded that none of the other claimed incidents of retaliation were materially adverse. He further found that plaintiff's evidence of

emotional distress predated the retaliatory transfer and reversed the $50,000 verdict, awarding instead $1 in nominal damages.  His ruling is currently on appeal to the Fifth Circuit.  See <u>Johnson v. Watkins</u>, 11-60261 (5th Cir filed April 12, 2011).

In the present case, JPS contends it is entitled to summary judgment on plaintiff's claims for age and gender discrimination, as well as the Rehabilitation Act claim, based on plaintiff's failure to administratively exhaust these claims.  It further asserts that summary judgment is appropriate as to the remaining claims because plaintiff has not established a *prima facie* case of either hostile work environment or retaliation and in any event has failed to counter JPS's legitimate nondiscriminatory reasons for certain of its actions.[2]  With regard to exhaustion, plaintiff recites in her response that "all discrimination charges of gender or sex based, age, and disability are covered under the umbrella of retaliation," such that she does "not have to have a letter of right to sue in order file a lawsuit."  As to the remaining claims, plaintiff appears to take the position that she has stated

---

[2]     Defendants urge that dismissal of Sargent, a mere agent of JPS, is appropriate where plaintiff also named the District as a defendant.  As plaintiff does not seem to dispute, defendant Sargent is not subject to individual liability in this action and thus, is entitled to dismissal.  <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258, (5th Cir. 1999) (Title VII does not impose individual liability upon employer's agent, rather "Congress's purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate respondeat superior liability into Title VII").

a prima facie case, and she steadfastly maintains that the complained-of actions were taken for impermissible reasons.  Based on the following, the court concludes that JPS's motion is due to be granted.

First, it is clear that plaintiff did not administratively exhaust many of the claims set forth in the complaint.  "The filing of an administrative complaint is a prerequisite to a Title VII suit," Thomas v. Atmos Energy Corp., 223 Fed. Appx. 369, 376 (5th Cir. 2007), as well as to a claim seeking relief under the Rehabilitation Act, see Smith v. Potter, 400 Fed. Appx. 806, 811 (5th Cir. 2010) ("the Rehabilitation Act ... established a private right of action subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII of the Civil Rights Act ....").  Administrative exhaustion allows an employer an opportunity to resolve an employee's complaints through voluntary compliance or conciliation before the employee may resort to the courts.  Lee v. Kroger Co., 901 F. Supp. 1218, 1223 (S.D. Tex. 1995) (citing Patterson v. McLean Credit Union, 491 U.S. 164, 180-81, 109 S. Ct. 2363, 2374-75, 105 L. Ed. 2d 132 (1989) ("In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation").  Accordingly, as a

basis for a lawsuit, the court may only consider "specific allegations made in [an] EEOC complaint, as well as 'any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.'" Thomas v. Atmos Energy Corp., 223 Fed. Appx. 369, 376 (5th Cir. 2007) (quoting Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993)).

To determine whether a claim has been exhausted, the court is to "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006). The Fifth Circuit has made clear that a Title VII plaintiff need not "check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." Id. Instead, "the crucial element of a charge of discrimination is the factual statement contained therein." Manning v. Chevron Chem. Co., L.L.C., 332 F.3d 874, 879 (5th Cir. 2003) (internal citations omitted).

In her EEOC charge, when selecting the basis for her complaint of discrimination, plaintiff marked only the box labeled "retaliation" and left blank the age, sex and disability boxes. Moreover, concluding her narrative explanation of the particulars

7

of her charge, she stated she believed she was "discriminated against and subjected to a hostile work environment *in retaliation for opposing discrimination* ...." (Emphasis added). And, there is nothing in her description of the factual basis of her complaint to indicate she was alleging discrimination based on gender or age, or in violation of the Rehabilitation Act. Further, in the court's opinion, plaintiff's claims of sex and age discrimination or violations of the Rehabilitation Act are not sufficiently like or related to the charge's retaliation allegations that the EEOC investigation that could reasonably have been expected to grow out of her charge would have encompassed these additional claims. See Lee, 901 F. Supp. at 1224 (finding that where plaintiff checked only the retaliation box on charge and stated in the particulars of the charge, "I believe that I have been discriminated against in retaliation for filing two charges against the company in violation of Title VII ...," he only set forth an allegation of retaliation and therefore was precluded from maintaining additional claims of racial discrimination and harassment); Williams v. Little Rock Mun. Water Works, 21 F.3d 218 (8th Cir. 1994) (holding that where plaintiff failed to check box for race discrimination and her EEOC charge and supporting affidavit specifically and unambiguously alleged that defendant retaliated against her because she had filed previous charge with EEOC, she had failed to administratively exhaust her race discrimination

claim).  For these reasons, the court concludes that plaintiff has
failed to administratively exhaust her claims for age and gender
discrimination, as well as her claim for violation of the
Rehabilitation Act.  Therefore, JPS's motion for summary judgment
as to these claims will be granted.

Turning to plaintiff's retaliation claim, "Title VII protects
employees from retaliation for engaging in an activity protected
by Title VII." Dixon v. Moore Wallace, Inc., 236 Fed. Appx. 936,
937, 2007 WL 1686973, 1 (5th Cir. 2007).  To determine whether
summary judgment is appropriate, the court employs the burden-
shifting framework set forth in McDonnell Douglas Corp. v. Green,
411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Under the
McDonnell Douglas burden-shifting framework, the plaintiff must
make out a *prima facie* case of retaliation.  If the plaintiff
establishes a *prima facie* case, the burden "shifts to the
defendant to demonstrate a legitimate nondiscriminatory purpose
for the employment action." Everett v. Central Mississippi, Inc.
Head Start Program,  444 Fed. Appx. 38, 43, 2011 WL 4716317, 4 (5th
Cir. 2011).  Once the defendant satisfies this burden, the burden
then shifts back to the plaintiff to:

> "create a genuine issue of material fact either (1) that
> the defendant's reason is not true, but is instead a
> pretext for [retaliation] (pretext alternative); or (2)
> that the defendant's reason, while true, is only one of
> the reasons for its conduct, and another motivating
> factor is the plaintiff's protected [activity]
> (mixed-motive[ ] alternative).

9

Everett, 2011 WL 4716317, at 4 (internal citations and quotations omitted).

Liberally construing plaintiff's memorandum and supporting affidavit and other exhibits submitted in response to JPS's motion,[3] it appears that plaintiff claims that each of the following acts by Jason Sargent constituted an instance of retaliation:

> (a) reprimanding her in November 2008 for filing a workers' compensation claim;
>
> (b) placing plaintiff on the security detail;
>
> (c) refusing to release plaintiff from her contract so that she could accept a job offer from another school district before the 2009-10 school year;
>
> (d) commenting in a June 2007 staff meeting that he did not choose or want plaintiff on staff and stating that plaintiff could be acting as spy for JPS Human Resources;
>
> (e) allowing co-workers to verbally assault her in May 2008 and then refusing to document the incidents;
>
> (f) giving her an unfair performance evaluation in February 2008;
>
> (g) during the 2007-2008 school year, refusing to allow plaintiff to utilize the copy machine for school-related

---

[3]    In view of plaintiff's pro se status and the rather muddled state of her submissions, the court has undertaken a painstaking review of plaintiff's response and supporting exhibits in an effort to ascertain each specific act or incident on which she relies in support of her retaliation claim and, giving plaintiff the benefit of the doubt, has included in its consideration every act or incident mentioned unless she purported to specifically tie it to some other type of alleged discrimination.

10

work which required her to make copies at a
congressman's office;

(h) denying plaintiff a stipend to buy classroom
supplies;

(i) "demoting" her in August 2008 from the position of
literacy coach to second grade teacher and soon
thereafter involuntarily assigning her to serve as a
third grade teacher and then as an interventionist; and

(j) placing plaintiff on leave without pay during the
2008-2009 school year after she sustained an injury at
work.

To establish a *prima facie* case of retaliation, plaintiff

must show that (1) she engaged in activity protected by Title VII,

(2) an adverse employment action occurred, and (3) a causal link

existed between the protected activity and the adverse employment

action.  Nicholson v. Dart Container Corp., 602 F. Supp. 2d 760,

768 (S.D. Miss. 2008).  An employment action is adverse when "'a

reasonable employee would have found the challenged action

materially adverse, which in this context means it well might have

dissuaded a reasonable worker from making or supporting a charge

of discrimination.'"  Id. at 769 (citation omitted).

In its motion, JPS maintains that plaintiff has no proof that

several of the incidents alleged by plaintiff occurred, and it

asserts that as a matter of law, other of the alleged acts of

retaliation do not qualify as "materially adverse."[4]  Finally, it

---

[4]     JPS does not dispute that plaintiff engaged in protected
activity by filing her June 2007 EEOC charge and her prior lawsuit
in October 2007.

11

contends that, in any event, plaintiff has failed to either
establish the requisite causal connection between the alleged
adverse actions and her protected activity necessary to meet her
*prima facie* case or to otherwise come forward with evidence
creating an issue of fact as to JPS's motivation regarding those
actions for which JPS has articulated a legitimate
nondiscriminatory reason.  For the reasons that follow, the court
finds merit in each of JPS's arguments.

First, the court agrees that plaintiff has failed to present
any competent proof in support of the first three alleged adverse
actions (a-c).  Plaintiff's response alludes to a letter
reprimanding her for her filing a workers' compensation claim, but
the exhibit she cites does not even mention a workers'
compensation claim.  Rather, the August 7, 2008 letter from
Sargent to plaintiff noted that she had failed to report to him
before leaving campus, as required by JPS policy, and that in the
future, she was to notify him directly before leaving campus.

The court also could find no evidence that plaintiff was
assigned to the security team, and the court would note, too, that
plaintiff has not explained why such an assignment would be
considered materially adverse.  Finally, there is no competent
proof that Sargent refused to release Johnson from her contract at
the beginning of the 2009-10 school year.  On this point,
plaintiff states in her affidavit that she applied for a position

with the Canton Public School District in the summer of 2009 and was initially told by some unidentified individual with the Canton district that she would be hired after this individual spoke with Sargent; but according to plaintiff, when she called back to check on the position, she was advised that Sargent would not release her from her contract.  These assertions by plaintiff are plainly inadmissible hearsay.

JPS argues that alleged retaliatory acts (d), (e) and (f) do not rise to the level of materially adverse employment actions. The Supreme Court has recognized that "normally petty slights, minor annoyances, and simple lack of good manners" will not deter victims of discrimination from complaining to the EEOC, <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d (2006), and thus, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience," <u>id</u>., 126 S. Ct. at 2415.  <u>See</u> <u>also</u> <u>Aryain v. Wal-Mart Stores Texas LP</u>, 534 F.3d 473, 485 (5th Cir. 2008) (holding that as a matter of law rude treatment does not rise to the level of material adversity"). In the court's opinion, JPS is correct that the referenced alleged retaliatory acts (d-f) clearly fall within the category of "petty slights and minor annoyances" which would not dissuade a

13

reasonable work from making a complaint.[5] See Stewart v. Miss. Transp. Com'n, 586 F.3d 321, 331-32 (5th Cir. 2009) (concluding as a matter of law that following acts were not materially adverse: (1) "personal items were taken from [plaintiff's] desk"; (2) "the locks on [plaintiff's] office had been changed and she was not allowed to close her office door"; and (3) "[plaintiff] was chastised by superiors and ostracized by co-workers"); Peace v. Harvey, 207 Fed. Appx. 366, 368-69 (5th Cir. 2006) (finding as matter of law that the following were either not supported or constituted mere petty slights or minor annoyances: "[plaintiff] received a note detailing leave approval procedures from the Deputy Chief of Staff; she was not provided a designated seat at a ceremony for her departing general; she was assigned 'menial and degrading work' when told to work on security files and other "non-critical" tasks; she was told she could no longer park in her assigned space; and, three days before her retirement date, a superior yelled at her and told her to move out of her office."); Magiera v. City of Dallas, 389 Fed. Appx. 433, 437 (5th Cir. 2010) (finding that following actions did not constitute materially adverse employment actions: "(1) [plaintiff's] supervisors sent her home from work after she requested a control number; (2) other

---

[5]    The court notes, too, that it is equally clear that, even were plaintiff able to demonstrate that she was reprimanded for filing a workers' compensation claim and placed on security details, these actions are not materially adverse.

officers "clicked" her on the radio and refused to partner with her; (3) Internal Affairs investigated complaints lodged against her with heightened scrutiny; (4) she was treated more harshly in interviews and denied lateral transfers; (5) she was denied overtime assignments; and (6) she was denied the opportunity to serve as an FTO"); Earle v. Aramark Corp., 247 Fed. Appx. 519, 524 (5th Cir. 2007)(concluding that disciplinary write-ups and alleged retaliatory micro-managing of plaintiff's performance did not constitute materially adverse employment actions).

With regard to the allegations (g) through (j), even assuming these acts were materially adverse, for the reasons that follow, plaintiff still cannot prevail on her retaliation claim on the basis of these alleged acts.  Regarding the denial of access to the copy machine, Sargent explains in his affidavit that due to "budgetary cuts and constraints," he implemented a policy of limiting the use of copy paper and that in a further effort to save wear and tear on newly-acquired copy machines, he limited the individuals who could make copies, requiring staff to submit requests for copies in advance.  In her response, plaintiff does not specifically address this legitimate, nondiscriminatory reason for limiting her access to the copy machine.  Rather, throughout her response she offers only a conclusory assertion, or speculation, that Sargent was conspiring with plaintiff's former principal at Rowan to retaliate against her.  This is clearly

insufficient to create a genuine issue of material fact as to Sargent's motivation for limiting her access to the copy machine.

Plaintiff complains that Sargent retaliated against her by denying her a stipend which other certified teachers received.[6] To address this charge, JPS has presented the affidavit of JPS Chief Financial Officer Sharolyn Miller, in which she explains that for the 2007-08 school year, during which plaintiff was employed as a literacy coach, she was not eligible to receive the stipend under the U.S. Department of Education's Education Enhancement Funds guidelines because her position was being funded with Title I federal funds. Miller states that for the 2008-09 school year, plaintiff was eligible for the allocation but did not receive it because she worked less than one month during the academic year. And finally, for the 2009-10 school year, plaintiff received the stipend. Again, in the face of JPS's legitimate, nondiscriminatory reason, plaintiff has failed to come forward with any proof evincing a retaliatory motive.

JPS has offered proof to show that the transfer of plaintiff from literacy coach to second grade teacher was not a demotion or that there is any causal connection between her protected activity and the transfer, since Sargent was not even aware of plaintiff's

---

[6]     Plaintiff seems to link this action to her putative gender discrimination claim. In an effort to be thorough and in view of plaintiff's pro se status, the court is considering it as part of her retaliation claim.

16

protected activity when he made the reassignment decision in May
2008.  It has nevertheless offered, and submitted supporting
evidence of its legitimate, nondiscriminatory reason for the
reassignment.  According to Sargent, in the position of literacy
coach, plaintiff was required to interact with a team of teachers
and other staff, and he viewed her interpersonal skills as an area
where she needed improvement.  He considered that she was better
suited to a teaching position because, as evidenced by his
February 2008 Summative Evaluation, he had observed her
interacting with students and concluded that she worked well with
students and that they responded well to her.

Plaintiff asserts in response that her removal from the
literacy position had nothing to do with her teaching credentials
but rather occurred because Sargent had promised the position to
another staff member before she was transferred to Brown
Elementary from Rowan.  She also contends that pretext is shown by
the fact that less than one week after the start of the 2008-09
school year, Sargent moved her from the position of second grade
teacher to third grade teacher and then, ostensibly due to the low
number of third-graders, quickly moved her to the position of
interventionist.[7]  As JPS correctly points out, plaintiff has

_____

[7]    According to Sargent's affidavit, he decided to move
plaintiff out of the second grade classroom after the start of
school in August 2008 because she was absent the entire first week
of school due to a knee problem, causing students to miss much

failed to show any retaliatory motivation.  First, assuming it is true, Sargent's moving plaintiff out of the literacy coach position because he had promised it to another staff member is not any way indicative of retaliatory animus.  Nor has plaintiff sought to explain how Sargent's proffered reason for his decision to reassign her in August 2008 from a second grade teacher to a third grade teacher either renders false the reason he gave for removing her from the position of literacy coach or shows that the decision was motivated in any way by a desire to retaliate against her.

Plaintiff also complains generally that during the 2008-09 school year, Sargent placed her on leave without pay status even though she had presented him with documentation regarding an injury to her knee.  JPS contends that plaintiff has failed to come forward with evidence of a disability or to specify the dates on which she was on leave without pay.  Indeed, during her deposition, plaintiff was unable to recall exactly what her disability was or how it affected her daily activities.  She did direct the defendants to review the documentation from her

---

needed instruction.  At that point, he decided to move plaintiff to a position as teacher on an extension team in an effort to balance the needs of the children and to accommodate plaintiff's medical condition which caused to have limited mobility.  All this came to naught, as on August 28, 2008, plaintiff informed Sargent that she would be out for six to eight weeks on medical leave. However, she ultimately did not return to work for the entire academic year.

physician.  The only physician documentation included with
plaintiff's response is an August 1, 2008 "Physician's Work Status
Report" which indicated a diagnosis of left knee pain, and which
discharged plaintiff to seated work.  Despite plaintiff's failure
to outline the precise contours of this claim, JPS has offered the
affidavit of Velma Chisolm, JPS Payroll Supervisor, who explains
that it is JPS's policy that an employee is provided ten days of
sick leave and two days of personal leave per school year and that
any leave in excess of these days is designated as leave without
pay.  She further reports during the 2008-09 school year,
plaintiff took one day of personal leave and 139 days of sick
leave.  In response to this legitimate nonretaliatory reason for
placing plaintiff on leave without pay status, plaintiff merely
repeats her conclusory charge of a conspiracy between Sargent and
the principal of Rowan Elementary.  As plaintiff has failed to
create a genuine issue of material fact as to any of her
retaliation claims, JPS's motion for summary judgment as to these
claims will be granted.

Plaintiff has asserted a putative claim for a hostile work
environment.  A prima facie case of a retaliatory hostile work
environment would require the plaintiff to show: (1) she belonged
to a protected class; (2) she was subjected to unwelcome
harassment; (3) the harassment was based on her protected class;
and (4) the harassment affected a term, condition or privilege of

employment.  <u>Ramsey v. Henderson</u>, 286 F.3d 264, 268 (5th Cir.

2002).  Regarding the fourth element,

> [h]arassment affects a "term, condition, or privilege of
> employment" if it is "sufficiently severe or pervasive
> to alter the conditions of the victim's employment and
> create an abusive working environment."  <u>Id.</u> (quotation
> marks and citations omitted).  Workplace conduct "is not
> measured in isolation."  <u>Id.</u> (quotation marks and
> citation omitted).  In order to deem a work environment
> sufficiently hostile, "all of the circumstances must be
> taken into consideration."  <u>Id.</u>  This includes "the
> frequency of the discriminatory conduct; its severity;
> whether it is physically threatening or humiliating, or
> a mere offensive utterance; and whether it unreasonably
> interferes with an employee's work performance."  <u>Id.</u>
> (quotation marks and citations omitted).  To be
> actionable, the work environment must be "both
> objectively and subjectively offensive, one that a
> reasonable person would find hostile or abusive, and one
> that the victim in fact did perceive to be so."
> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787, 118
> S. Ct. 2275, 141 L. Ed.2d 662 (1998) (citation omitted).

<u>Hernandez v. Yellow Transp., Inc.</u>, 641 F.3d 118, 124 (5th Cir.

2011).  Assuming the existence of a cause of action for a

retaliatory hostile work environment, it is clear that plaintiff

cannot establish her *prima facie* case.[8]

While neither her amended complaint nor response to the

motion for summary judgment is clear, at her deposition, plaintiff

---

[8]     It is unclear whether the Fifth Circuit recognizes a
claim for retaliatory hostile work environment.  <u>See</u> <u>Bryan v.
Chertoff</u>, 217 Fed. Appx. 289, 293-94 (5th Cir. 2007) (declining to
recognize retaliatory hostile work environment claim, but
concluding that, in any event, plaintiff had failed to establish a
*prima facie* case); <u>Fallon v. Potter</u>, 277 Fed. Appx. 422 (5th Cir.
2008) (plaintiff failed to make out *prima facie* claim for
retaliatory hostile work environment).

identified the basis of her hostile work environment as follows:
(a) Sargent told her in 2007 that neither he nor the staff wanted
plaintiff at Brown Elementary; (b) Sargent made negative comments
about her in a meeting at the beginning of the 2007-2008 school
year while plaintiff was out of the room; (c) Sargent criticized
plaintiff as a literacy coach at a meeting.  She also claims that
two verbal disputes with co-workers during the 2008-09 school year
contributed to the hostile work environment at Brown.  According
to plaintiff, ultimately, she resigned under constructive
discharge because the "environment at Brown had become contencious
[sic] such that she feared for her safety and job security."

Acknowledging that she would belong to the protected class
and assuming that all the acts of which she complains occurred and
amount to "harassment," plaintiff has presented no proof that any
of these actions were taken against her on account of her having
filed a charge with the EEOC or having filed the first lawsuit,
and she cannot show that the harassment was either severe or
persuasive.  Plaintiff complains of only one negative verbal
interaction with Sargent and two instances in which she was not in
the room but heard that he made "negative" comments about her.  At
her deposition, plaintiff refused to identify any of the specific
negative comments which Sargent allegedly made about her in these
meetings and she testified she did not know the names of any of
the attendees who allegedly heard these negative comments.  The

court concludes that as a matter of law, Sargent's infrequent "negative" comments, which did not involve the threat of physical harm, are not objectively offensive and thus, are not actionable. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (in attempting to determine whether workplace environment is legally hostile, court takes into account "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."); Harvill v. Westward Commc'ns LLC, 433 F.3d 428, 434 (5th Cir. 2005) ("To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.") (citing Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th Cir. 1999)).

Additionally, while plaintiff makes a conclusory allegation of a conspiracy to retaliate against her, she has failed to come forward with competent proof to tie the two verbal disputes with her co-workers to her having engaged in a protected activity.  In any event, these two incidents are best viewed as isolated events which do not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (citing

22

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82, 118 S.
Ct. 998, 140 L. Ed. 2d 201 (1998))("[S]imple teasing, offhand
comments, and isolated incidents (unless extremely serious) will
not amount to discriminatory changes in the 'terms and conditions
of employment.'"). In light of plaintiff's failure to establish a
*prima facie* case, JPS is entitled to summary judgment as to her
hostile work environment and constructive discharge claims.
Landgraf v. USI Film Products, 968 F.2d 427, 429-430 (5th Cir.
1992) (providing that to prove claim of constructive discharge,
plaintiff is required to show that a "reasonable person in [her]
shoes would have felt compelled to resign" and that constructive
discharge claim requires a "greater severity or pervasiveness of
harassment than the minimum required to prove a hostile work
environment").

Based on the foregoing, it is ordered that defendants' motion
for summary judgment is granted. It is further ordered that
plaintiff's motions for summary judgment, for leave to amend her
response and for "leave to submit plaintiff's reply in opposition
to defendants' motion" are denied and that defendants' motion to
strike plaintiff's motion for summary judgment is denied as moot.

A separate judgment will be entered in accordance with Rule
58 of the Federal Rules of Civil Procedure.

SO ORDERED this 7th day of February, 2012.

_/s/ Tom S. Lee_____
UNITED STATES DISTRICT JUDGE